1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2    ------------------------------x
                                       24-CR-00383(OEM)
 3    UNITED STATES OF AMERICA,
                                       United States Courthouse
 4           Plaintiff,                Brooklyn, New York

 5           -against-                 October 1, 2024
                                       2:30 p.m.
 6    Da'VANTE BOLTON,

 7           Defendant.

 8    ------------------------------x

 9              TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
                BEFORE THE HONORABLE ORELIA E. MERCHANT
10                   UNITED STATES DISTRICT JUDGE

11    APPEARANCES

12    For the Government:        BREON S. PEACE, ESQ.
                                 UNITED STATES ATTORNEY
13                               Eastern District of New York
                                 271 Cadman Plaza East
14                               Brooklyn, New York 11201
                                 BY:  ANDREW GRUBIN, ESQ.
15                               Assistant United States Attorney

16    For the Defendant:         KREISBERG & MAITLAND LLP
                                 75 Maiden Lane, Suite 603
17                               New York, New York 10038
                                 BY:  GARY MAITLAND, ESQ.

18

19    Also Present:             Da'VANTE BOLTON, DEFENDANT
                                 CHELSEA HILL

20

21    Court Reporter:           AVERY N. ARMSTRONG, RPR, NYRCR
                                 Phone:  718-613-2419
22                               Fax:    718-613-2639
                                 Email:  Aarm.edny@gmail.com

23


24    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.

25
```

PROCEEDINGS                                2

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.  The Honorable

3    Orelia E. Merchant is presiding.

4              THE COURT:  Please be seated.  You can please call

5    the case.

6              THE COURTROOM DEPUTY:  This is a criminal cause for

7    a waiver of indictment and pleading in the matter of USA

8    versus Bolton, docket number 24-CR-383.

9              Counsel, please state your appearance for the

10   record, starting with the Government.

11             MR. GRUBIN:  Good afternoon, Your Honor.

12             Andrew Grubin for the Government.

13             THE COURT:  Good afternoon.

14             MR. MAITLAND:  Good afternoon, Your Honor.

15             On behalf of Da'Vante Bolton, I am Gary Maitland,

16   M-A-I-T-L-A-N-D, 75 Maiden Lane, New York, New York.  And Your

17   Honor, with your permission, with me at counsel table, I'd

18   like to introduce Chelsea Hill, recent graduate who has taken

19   the bar exam and is awaiting results and admission.  But I've

20   asked her to come today in order to experience a federal

21   proceeding.

22             THE COURT:  Certainly.

23             MR. MAITLAND:  Thank you, Judge.

24             THE COURT:  Good afternoon to you both.  Good

25   afternoon to Mr. Bolton.

PROCEEDINGS                              3

1          MR. BOLTON:  Good afternoon.

2          THE COURT:  We are here today because I understand

3     that Mr. Bolton has indicated that he is prepared to waive his

4     right to an indictment and enter a plea to Count One, the

5     information; is that correct?

6          MR. MAITLAND:  That is correct, Judge.

7          THE COURT:  These are both serious decisions,

8     Mr. Bolton, and I must be certain that you are making them

9     knowingly and voluntarily and with the understanding of your

10    rights and the consequences of your plea.  I'm going to

11    explain to you the rights that you will be giving up by

12    waiving an indictment and also by pleading guilty.

13          In addition, before I accept your guilty plea, there

14    are a number of questions I must ask you to establish that it

15    is a valid plea.  If you do not understand my questions,

16    please say so, and I will reword the question.  If you would

17    like to consult your attorney at any time, for any reason,

18    please let me know, and I will give you as much time as you

19    need to do so.

20          Do you understand that?

21          MR. BOLTON:  Yes, ma'am.

22          THE COURT:  Okay.  I'll need you to answer the

23    questions that I'm going to ask you under oath, so with that,

24    I'm going to if my clerk would swear in the defendant.

25          THE COURTROOM DEPUTY:  Please stand and raise your

PROCEEDINGS                         4

1   right hand.

2           Do you swear or affirm that the answers you are

3   about to give in connection to this plea will be the truth,

4   the whole truth, and nothing butt the truth, so help you God?

5           MR. BOLTON:  Yes, ma'am.

6           THE COURTROOM DEPUTY:  Thank you.  Please be seated.

7           THE COURT:  What is your full name?

8           MR. BOLTON:  Da'Vante Bolton.

9           THE COURT:  And how old are you?

10          MR. BOLTON:  Thirty-one years old.

11          THE COURT:  How much education have you had?

12          MR. BOLTON:  I have a bachelor's degree in

13  sociology.

14          THE COURT:  Are you able to speak English?

15          MR. BOLTON:  Yes, ma'am.

16          THE COURT:  Have you been able, sir, counsel, to

17  communicate to your client in English?

18          MR. MAITLAND:  Yes, Your Honor, I have.

19          THE COURT:  Okay.  Mr. Bolton, I have to ask you

20  some questions to make sure you understand clearly what is

21  happening here today and are moving forward with a clear mind.

22  I ask the same questions in every proceeding of this kind.

23          Have you ever been treated or hospitalized for any

24  mental illness?

25          MR. BOLTON:  No.

PROCEEDINGS                    5

1          THE COURT:  Are you currently or have you recently

2    been under of care a doctor or psychiatrist for any reason?

3          MR. BOLTON:   --

4          MR. MAITLAND:  Your Honor, if I may.  Judge, as part

5    of the pre-plea proceedings here, the pretrial services office

6    had made application to the Court to extend the terms of his

7    pretrial release to enable them to refer him for mental health

8    counseling.

9          Based upon my own experiences with Mr. Bolton, I not

10   only agree but I made an application for the appointment of

11   Dr. Alexander Sasha Bardey of Fifth Avenue Forensics, pursuant

12   to the Criminal Justice Act to diagnose, establish a regimen

13   of counseling therapy pending the sentence, and to render a

14   report to the Court in sentencing in terms of mitigation.

15   That process has only just begun Your Honor.  And, in fact,

16   Dr. Bardey first interviewed Mr. Bolton yesterday and I have a

17   letter here if the Court.  So I just wanted to jump up, Judge,

18   because I know he wouldn't know how to answer that, so I

19   wanted to give you that information.

20         THE COURT:  Understood.

21         So he's been evaluated?

22         MR. MAITLAND:  The process has started, Judge.  They

23   feel that more than one session will be required, as they

24   explained in the letter that was provided to me last night.

25         THE COURT:  Understood.

PROCEEDINGS                                  6

1          And I'll ask Mr. Bolton, I understand the

2    representations that have just been made by your counsel.

3    Outside of what has just been relayed for the record, with

4    regard to that application, which I have seen and I understood

5    that in granting that request, that the Court -- and that is

6    the magistrate judge -- permitted that particular modification

7    to your pretrial services supervision.

8          My question to you is, outside of that, have you

9    been under the care of any other doctor or psychiatrist?

10          MR. BOLTON:  No, ma'am.

11          THE COURT:  Okay.  Have you been treated or

12    hospitalized for any type of addiction, including drug,

13    alcohol, or addiction?

14          MR. BOLTON:  No, ma'am.

15          THE COURT:  Have you taken any drugs, medicine, or

16    pills or had any alcoholic beverages in the past two days?

17          MR. BOLTON:  I had alcohol beverages due to my

18    friend passed away yesterday morning.

19          THE COURT:  And you said yesterday morning?

20          MR. BOLTON:  Yes.

21          THE COURT:  And how much alcohol did you have

22    yesterday morning?

23          MR. BOLTON:  I don't know, ma'am.

24          THE COURT:  Whatever it was that you had yesterday

25    morning, what time of the morning was the last time that you

PROCEEDINGS                    7

1    drank?

2           MR. BOLTON:  Probably the afternoon, around

3    5:00 o'clock.

4           THE COURT:  5:00 o'clock yesterday?

5           MR. BOLTON:  (Nonverbal gesture).

6           THE COURT:  And outside of alcohol, is there any

7    other -- is there anything else that you have consumed that is

8    by way of either drugs or medicine or pills?

9           MR. BOLTON:  Motrin.

10          THE COURT:  Okay.  In your view, does the alcohol

11   that you imbibed yesterday interfere with your ability to

12   understand what's going on today with the proceedings?

13          MR. BOLTON:  No, ma'am.

14          THE COURT:  Is there any medication that you believe

15   you should be taking that you haven't taken?

16          MR. BOLTON:  No, ma'am.

17          THE COURT:  Is your mind clear today?

18          MR. BOLTON:  Yes, ma'am.

19          THE COURT:  Do you understand what's happening here

20   today?

21          MR. BOLTON:  Yes, ma'am.

22          THE COURT:  Counsel Maitland, have you discussed

23   this matter with Mr. Bolton?

24          MR. MAITLAND:  I have, Your Honor.

25          I discussed it with him both from the standpoint of

PROCEEDINGS                                    8

1    yesterday's death of his closest friend, the impact of that,

2    the fact that he had X amount of alcohol.  I discussed this

3    with the Government who had graciously offered to consent to

4    delay this proceeding if I felt that Mr. Bolton required that.

5    He and his grandmother who is present in the room, Your Honor,

6    Clara Richards met with me for about an hour before we came

7    over here and he satisfied me, frankly, Judge, that he is

8    fully focused and wishes to proceed today.

9            THE COURT:  Mr. Bolton, I'm very sorry to hear about

10   the passing of your friend.

11           MR. BOLTON:  Thank you.

12           THE COURT:  I want to be sure that you understand

13   the rights that you would be giving up by waiving an

14   indictment and pleading guilty.

15           MR. BOLTON:  Yes, ma'am.

16           THE COURT:  I'll ask your counsel, do you believe,

17   fully, that he's able to understand the nature of these

18   proceedings?

19           MR. MAITLAND:  Yes, Your Honor.  I'm quite sure that

20   he is.

21           THE COURT:  Do you have any doubt as to Mr. Bolton's

22   competency to plead at this time?

23           MR. MAITLAND:  No, I do not.

24           THE COURT:  Have you advised Mr. Bolton of the

25   maximum and the minimum sentence and fine that can be imposed?

PROCEEDINGS                          9

1          MR. MAITLAND:  I have, Your Honor, both in terms of

2     the Government's view of the guidelines and ours, which are

3     different, and Mr. Bolton and I have reviewed both scenarios

4     as well as others in terms of the guideline range and the

5     sentencing factors that --

6          THE COURT:  If you could just for the court reporter

7     just slow down and elevate your voice.

8          MR. MAITLAND:  I apologize.  It's post surgical.

9          The sentencing factors that the Court will take into

10    account in determining whether the guidelines should apply,

11    and if so, where within them, and the possibility of

12    modifications, and we have conferred about all this at great

13    length, Your Honor.  I think he was remarkably clear in

14    understanding, asking intelligent questions, and quite clear

15    today that he was ready to accept responsibility and proceed.

16    He didn't want to delay it because of his personal loss

17    yesterday.

18          THE COURT:  Thank you.

19          And counsel, just to be clear on the record, you

20    have fully discussed the implications or the effect of the

21    sentencing guidelines?

22          MR. MAITLAND:  We have, Judge.  Both the base

23    offense levels, the possible enhancement, as well.  Yes.

24          THE COURT:  Thank you.

25          MR. MAITLAND:  Thank you, Judge.

PROCEEDINGS                              10

1           THE COURT:  Mr. Bolton, you have the right to remain

2    silent.  That means that you are not required to make any

3    statements to anyone that might incriminate you.  If you

4    choose to make a statement, you have the right to have your

5    attorney with you at that time.  If you've already made a

6    statement, you do not have to continue making statements.  And

7    if you start making a statement, you may stop speaking at any

8    time.  The reason these rights are so important is that if you

9    choose to make a statement, anything that you say can and

10   likely will be used against you by the Government to prosecute

11   you in this case or to use it against you in other ways.

12           Do you understand those rights?

13           MR. BOLTON:  Yes, ma'am.

14           THE COURT:  And if you decide to plead guilty today,

15   I will need to ask you questions about what you did that makes

16   you guilty, I need to satisfy myself that you are, in fact,

17   guilty to the charge to which you seek to plead guilty, so

18   you'll need to answer my questions and acknowledge your guilt.

19   That means, you will be waiving, in part, your right to remain

20   silent and not say anything that might incriminate you in

21   order to tell me what you did.

22           Do you understand that?

23           MR. BOLTON:  Yes, ma'am.

24           THE COURT:  You also have the right to be

25   represented by counsel at every stage of these proceedings.

PROCEEDINGS                    11

1   You have that right even if you cannot afford to hire an

2   attorney yourself.  Attorney Maitland has been retained to

3   represent you new in case.

4           Mr. Bolton, have you reviewed a copy of the

5   information pending against you?

6           MR. BOLTON:  Yes.

7           THE COURT:  That is, the written charge and the

8   forfeiture allegation made against you in this case?

9           MR. BOLTON:  Yes, ma'am.

10          THE COURT:  Have you fully discussed the charge and

11  the forfeiture altercations as well as the case in general

12  with your attorney?

13          MR. BOLTON:  Yes, ma'am.

14          THE COURT:  Have you had sufficient time to discuss

15  with your attorney, whether or not to waive your right to

16  indictment and plead guilty?

17          MR. BOLTON:  Yes, ma'am.

18          THE COURT:  Are you fully satisfied with counsel,

19  the counsel representation, and advice given to you

20  in this case by your attorney?

21          MR. BOLTON:  Yes, ma'am.

22          THE COURT:  I'm now going to explain to you your

23  right to proceed by an indictment and the rights you will be

24  giving up if you agree to waiver of the indictment.

25          You've indicated your willingness to waive an

1   indictment and plead guilty to Count One of the information

2   charging with federal program bribery in violation of Title

3   18, United States Code, Section 666(a)(1)(B).  Specifically,

4   the information alleges in or about and between June 2022 and

5   February 2024, both dates being approximate and inclusive,

6   within Eastern District of New York and elsewhere, the

7   defendant, Da'Vante Bolton, being an agent or a local

8   government agency to wit:  New York City's Administration for

9   Children's Services, did knowingly, intentionally, and

10  corruptly solicit and demand for the benefit of Bolton, and

11  accept and agreed to accept one or more things of value, to

12  wit: United States currency and other forms of payment

13  intending to be influenced and rewarded in connection with

14  business and one or more transactions and series of

15  transactions of such Government agency involving things of

16  value of $5,000 or more, while such Government agency was in

17  receipt of, in any one-year period, benefits in excess of

18  $10,000 under one or more federal programs involving grants,

19  contracts, subsidiaries, loans, guarantees, insurance, and

20  other forms of federal assistance.  That's Title 18, United

21  States Code, Section 666(a)(1)(B)(ii) and 3551 sequence.

22          Under federal law, a felony charge can only proceed

23  to a guilty verdict or plea if an indictment or information

24  has been filed.  An indictment is issued by a Grand Jury.  The

25  Grand Jury is made up of 16 to 23 people.  The Government

PROCEEDINGS                      13

1  presents evidence to the Grand Jury, and if at least 12

2  members of the Grand Jury finds that there is probable cause

3  to believe that a crime has been committed and that you

4  committed it, the Grand Jury returns an indictment.  So you

5  have a right to require the Government to present its facts to

6  a Grand Jury and have at least 12 of the Grand Jurors find

7  probable cause to believe that you committed the charged

8  offense.  You also have the right to have a federal Grand Jury

9  comprised of a fair cross-section of the area from which

10 indictment is returned and the right to challenge any alleged

11 underrepresentation in the jury pool.

12         Your attorney has indicated that you've elected to

13 proceed by information, instead.  An information has the same

14 effect as an indictment, but it is used where the parties

15 agree that the Government would be able to establish probable

16 cause to file the charge.

17         Do you understand your right to proceed by

18 indictment, including the right to challenge the jury

19 composition?

20         MR. BOLTON:  Yes, ma'am.

21         THE COURT:  Counsel, have you advised your client of

22 the meaning of a waiver of indictment?

23         MR. MAITLAND:  I have, Your Honor.

24         THE COURT:  Does he, in your opinion, understand

25 your explanation of the rights he will be waiving?

PROCEEDINGS                                    14

1           MR. MAITLAND:  Yes, Judge, he does.

2           THE COURT:  Mr. Bolton, do you wish to waive your

3    right to proceed by indictment and proceed, instead, by

4    information?

5           MR. BOLTON:  Yes, ma'am.

6           THE COURT:  In that case, I will ask now that the

7    waiver of indictment form be executed and filed.

8           MR. GRUBIN:  Your Honor, if I may while that's just

9    being done, I believe that the plea agreement might have still

10   the inaccurate date for the third point.  And before we

11   address signing the plea agreement, I just want to make sure

12   that that is corrected to today's date, and I'm happy to

13   initial next to it, as well.  I just wanted to address it now,

14   although happy to wait until the appropriate time to do that.

15          THE COURT:  So the plea agreement -- strike that

16   please, from the record.

17          Counsel Grubin, will you file the information, the

18   original information?  Is that filed?

19          MR. GRUBIN:  No, Your Honor.  Typically, I

20   believe --

21          THE COURTROOM DEPUTY:  After, I would file it.

22          THE COURT:  It's been returned to you?

23          THE COURTROOM DEPUTY:  Yes.

24          THE COURT:  Okay.

25          Mr. Bolton, I'm now going to explain certain rights

PROCEEDINGS                                    15

1  to you that you would be giving up if you enter a plea of

2  guilty.  You have a right to continue to plead not guilty.  No

3  one can be forced to plead guilty.

4          Do you understand?

5          MR. BOLTON:  Yes, ma'am.

6          THE COURT:  If you were to continue to plead not

7  guilty, you would have the right, under the Constitution and

8  the laws of the United States, to a speedy and public trial by

9  a jury.

10         Do you understand?

11         MR. BOLTON:  Yes, ma'am.

12         THE COURT:  You would have the right to participate

13 in the jury selection process through counsel and to object to

14 potential jurors.

15         Do you understand?

16         MR. BOLTON:  Yes, ma'am.

17         THE COURT:  At trial, you would be presumed to be

18 innocent and the Government would have to prove you guilty

19 beyond a reasonable doubt.

20         Do you understand?

21         MR. BOLTON:  Yes, ma'am.

22         THE COURT:  If you were to go to trial on this

23 charge, the Government would have to prove the following

24 elements by a reasonable doubt:  To prove the crime of Federal

25 Program Bribery, the Government must prove the following:

PROCEEDINGS                                    16

1   First, that the defendant was a Government of the New York

2   City's Administration of Children's Services or ACS; second,

3   that in a one-year period, ACS received federal benefits in

4   excess of $10,000; third, that defendant solicited, demanded,

5   accepted, or agreed to accept something value from another

6   person; fourth, that the defendant acted corruptly with the

7   intent to be influenced or rewarded with respect to any

8   business, transaction, or series of transactions of ACS; and

9   fifth, that the value of the transactions to which the payment

10  related was at least $5,000 in the aggregate.

11          In addition, there is a forfeiture allegation in the

12  information which simply puts you on notice that if you were

13  convicted of the charge, the Government could seek to

14  forfeiture or seize from you, property used to commit the

15  crime or proceeds you obtained from committing the crime.

16          As I mentioned earlier, Mr. Bolton, you would have

17  the right to the existence of counsel for your defense.

18  Mr. Maitland, your counsel, would represent you at trial and

19  at every other stage of the proceeding.

20          Do you understand?

21          MR. BOLTON:  Yes, ma'am.

22          THE COURT:  You would have the right to see and hear

23  all witnesses and have them cross-examined in your defense.

24          Do you understand?

25          MR. BOLTON:  Yes, ma'am.

PROCEEDINGS                           17

1          THE COURT:  You would have the right not to testify,

2    unless you voluntarily elected to do so in your own defense.

3          Do you understand?

4          MR. BOLTON:  Yes, ma'am.

5          THE COURT:  You would have the right to compel the

6    attendance of witnesses to testify in your defense.

7          Do you understand?

8          MR. BOLTON:  Yes, ma'am.

9          THE COURT:  Should you not decide to testify or put

10   on any evidence at trial, these facts could not be used

11   against you.

12         Do you understand?

13         I need you to verbally --

14         MR. BOLTON:  Yes, ma'am.  I'm sorry.

15         THE COURT:  Thank you.  Just the court reporter

16   can't pick up the nod.

17         By entering a plea of guilty, and if I accept your

18   plea, there will be no trial and will you have waived or given

19   up your right to trial as well as all the other rights

20   associated with the trial that I just described.

21         Do you understand that?

22         MR. BOLTON:  Yes, ma'am.

23         THE COURT:  You will have no right to appeal the

24   conviction.  Though you may still be able to appeal the

25   sentence that is eventually imposed by the Court, by pleading

1    guilty, you give up the right to a jury trial on this charge.

2    The Court will simply enter a finding of guilty on the basis

3    of your guilty plea.

4              Do you understand?

5              MR. BOLTON:  Yes, ma'am.

6              THE COURT:  As I mentioned earlier, if you plead

7    guilty, I will have to ask you questions about what you did in

8    order to satisfy myself that you are guilty of the charge to

9    which you seek to plead guilty, and you will have to answer my

10   questions and acknowledge your guilt.  By answering my

11   questions, you'll be giving up your right not to incriminate

12   yourself.

13             Do you understand?

14             MR. BOLTON:  Yes, ma'am.

15             THE COURT:  Mr. Bolton, do you understand each and

16   every one of the rights I have just explained to you?

17             MR. BOLTON:  Yes, I do.

18             THE COURT:  If you were found guilty, you lose some

19   other important rights such as the right to vote, the right to

20   hold public office, and the right to serve on a jury.  Because

21   you are proposing to plead guilty to a felony, you will lose

22   the right to possess any kind of firearms or ammunition.  You

23   might also lose certain federal benefits.  A DNA sample may be

24   collected from you for analysis and indexing, the Government

25   also reserves the right to notify any state or federal agency

PROCEEDINGS                    19

1    by whom you are licensed or with whom you do business, as well

2    as any current or future employer of the fact of this

3    conviction, and finally, your guilty plea today may work to

4    disadvantage you if in the future you are found guilty in

5    another crime because there is a possibility you could receive

6    a more severe penalty at that time as a result of this guilty

7    plea and conviction.  We call these collateral consequences of

8    a conviction.

9              Do you understand them?

10             MR. BOLTON:  Yes, ma'am.

11             THE COURT:  Counsel, is your client a United States

12   citizen?

13             MR. MAITLAND:  Yes, Your Honor.

14             THE COURT:  Okay.  Your counsel has represented that

15   you are a United States citizen.  I am required, however, to

16   advise of the immigration consequences of the conviction if

17   you were not a United States citizen.

18             If you were not a United States citizen, your

19   conviction in this matter would likely result in being ordered

20   removed from the United States and prohibited from reentering.

21   The charge to which you propose to plead guilty is one that

22   appears to mandate deportation.  This is not an immigration

23   court and this Court will not make a decision as to whether or

24   not you would be removed, but most felony convictions result

25   in removal, and one should assume that once a criminal case is

PROCEEDINGS                                    20

1   closed, you would be removed from the United States and barred

2   from returning.

3            Do you understand that?

4            MR. BOLTON:  Yes, ma'am.

5            THE COURT:  Mr. Bolton, are you willing to give up

6   your right to trial and all of the other rights that I have

7   just discussed with you?

8            MR. BOLTON:  Yes, ma'am.

9            THE COURT:  Are you pleading pursuant to an

10  agreement with the Government?

11           MR. BOLTON:  Yes, I am.

12           THE COURT:  If I could please have marked as Court

13  Exhibit 1, your agreement with the Government pursuant to

14  which are you pleading guilty.

15           (Court Exhibit 1, was received in evidence.)

16           THE COURT:  Counsel, now would be the time that if

17  you and counsel would like to speak about the agreement, that

18  you should talk about that.

19           MR. GRUBIN:  Yes.  May I have a moment, Your Honor.

20           THE COURT:  Yes.

21           (Pause in the proceedings.)

22           THE COURT:  Yes, if she can please mark that

23  exhibit.

24           Can you give that back to counsel.  And counsel for

25  the Government, to look at that agreement.  I believe you were

PROCEEDINGS                    21

1    pointing to paragraph two.

2            MR. GRUBIN:  Thank you, Your Honor.

3            MR. MAITLAND:  Yes.  Sure.

4            MR. GRUBIN:  Thank you, Your Honor.

5            MR. MAITLAND:  Your Honor, I personally changed the

6    date at paragraph two from October -- September 23 to

7    October 1, and counsel for the Government and I have both

8    initialed the margin.

9            THE COURT:  Okay.  And should the defendant also

10   initial that, as well?

11           MR. MAITLAND:  I think so.

12           THE COURT:  Yes.

13           MR. MAITLAND:  Your Honor, my client has initialed

14   next to the other two.

15           THE COURT:  And if you could pass that then to my

16   deputy.

17           MR. MAITLAND:  We have not yet signed it.

18           THE COURT:  Oh, I'm sorry.  Now would be the time.

19           MR. MAITLAND:  Okay.

20           THE COURT:  I now have before me what's been marked

21   as Court Exhibit 1, the plea agreement.

22           On Page 3, paragraph two, the date that has been

23   stricken from September 23rd, 2024, to October 1st, 2024.

24           Mr. Bolton is that your initial that's here on the

25   side of this change?

1            MR. BOLTON:  Yes, ma'am.

2            THE COURT:  And now turning to the final, Page 9, of

3    this agreement.

4            Mr. Bolton, is this your signature that's here on

5    this page?

6            MR. BOLTON:  Yes, ma'am.

7            THE COURT:  Did you have an opportunity to read and

8    discuss the agreement with your attorney before you signed it?

9            MR. BOLTON:  Yes, ma'am.

10           THE COURT:  Did you have sufficient time to review

11   it with your attorney?

12           MR. BOLTON:  Yes, I did.

13           THE COURT:  Did you understand it?

14           MR. BOLTON:  Yes, I did.

15           THE COURT:  Okay.  Counsel, did you have sufficient

16   time to review this agreement with your client?

17           MR. MAITLAND:  I did, Your Honor.  We reviewed it

18   both generally and then line by line, in fact, and he

19   definitely understood it in full.

20           THE COURT:  Mr. Bolton, do you have any questions

21   about this agreement?

22           MR. BOLTON:  No, ma'am.

23           THE COURT:  Does the agreement represent your entire

24   understanding with the Government?

25           MR. BOLTON:  Yes, it does.

PROCEEDINGS                                          23

1          THE COURT:  Has anyone made any promise or assurance

2    that is not in this agreement to persuade you to accept this

3    agreement?

4          MR. BOLTON:  No.

5          THE COURT:  Has anyone threatened you in any way to

6    persuade you to accept this agreement?

7          MR. BOLTON:  No, ma'am.

8          THE COURT:  Are you pleading guilty of your own free

9    will because you are guilty?

10          MR. BOLTON:  Yes, ma'am.

11          THE COURT:  Mr. Maitland, were all formal plea

12    offers from the Government conveyed to Mr. Bolton?

13          MR. MAITLAND:  Yes, Judge.

14          THE COURT:  Okay.  Mr. Bolton, I've already

15    discussed the charge and the forfeiture allegations against

16    you.  I'm now going to tell you about some potential penalties

17    for this crime.  The maximum term of imprisonment is 10 years.

18    There is no minimum term of imprisonment.  As with regard to

19    supervised release, any term of imprisonment could be followed

20    by a term of supervised release of up to three years.

21    Supervised release refers to the period of time when you will

22    be subject to supervision by the probation department.  After

23    completing any term of imprisonment, you will have to follow

24    rules of supervised release, and if you violate those rules,

25    you could be sent back to prison without a jury trial to serve

PROCEEDINGS                                      24

1    an additional term of up two to two years, without any credit

2    of the time you previously served in prison as a result of

3    your sentence and without any credit for the time you spent on

4    post-release supervision.

5              Do you understand?

6              MR. BOLTON:  Yes, ma'am.

7              THE COURT:  Basically, if you violate the conditions

8    of supervised release, you could be given additional time in

9    prison.

10             Do you understand that?

11             MR. BOLTON:  Yes, ma'am.

12             THE COURT:  You also face a maximum possible fine of

13   the greater of $250,000 or twice the gross gain or twice the

14   gross loss to persons other than yourself.

15             In addition, I must order you to pay a mandatory

16   special assessment of $100.  You are also subject to

17   forfeiture based on your guilty plea.  Paragraphs six through

18   13 of the plea agreement indicate that you may be subject to

19   the forfeiture of any property, real or personal, constituting

20   or derived from proceeds obtained directly or indirectly as a

21   result of the offenses you have been charged with.

22   Specifically, the plea agreement contemplates a forfeiture

23   money judgment in the amount of $20,783.00.

24             Do you understand all these possible consequences of

25   your plea that I've gone through?

PROCEEDINGS                                    25

1          MR. BOLTON:  Yes, ma'am.

2          THE COURT:  As I'm sure your attorney has explained

3     to you, there are sentencing guidelines that I must follow in

4     determining the appropriate sentence in your case.  Under the

5     Sentencing Reform Act of 1984, the United States Sentencing

6     Commission has issued guidelines for judges to follow in

7     determining the sentence in a criminal case.  These guidelines

8     are advisory, and I will consider them, along with the

9     particular facts and circumstances of your case, and all the

10    sentencing factors set forth in federal statute 18 U.S.C.

11    Section 3553(a) in determining your sentence.

12         Mr. Bolton, have you and your attorney discussed how

13    the advisory sentencing guidelines might apply in your case?

14         MR. BOLTON:  Yes, ma'am.

15         THE COURT:  Has the Government estimated what the

16    guideline range is likely to be in this case?  And AUSA

17    Grubin, can you please walk me through that?

18         MR. GRUBIN:  Yes, Your Honor.

19         The Government estimates that the likely adjusted

20    offense level under the guidelines to be 22, and that's

21    predicated on a base offense level of 14, and then several

22    enhancements, plus two for it being more than one bribe, plus

23    four for a public official in a sensitive position, plus four

24    for more than $50,000 in bribes, and then a two-point

25    reduction for being a Zero-Point Offender which results in an

PROCEEDINGS                              26

1    initial offense level of 22.  That being said, with a

2    three-point reduction for acceptance of responsibility and

3    pleading by today's date, we arrive at an adjusted offense

4    level of 19, and that level carries a range of imprisonment of

5    30 to 37 months, assuming as we do, that the defendant falls

6    within Criminal History Category I.

7                THE COURT:  Okay.  Does the defense have a different

8    estimate?

9                MR. MAITLAND:  We do, Your Honor.

10               We largely agree with the Government.  However,

11   sharply disagree regarding the sensitive position or policy

12   impacting enhancement of four points.  So our calculation at

13   this time is 15 points, with a significantly lower base range

14   beginning at 18 months, instead of 30.

15               THE COURT:  With the base range of 18 months?

16               MR. MAITLAND:  Yes.

17               THE COURT:  Mr. Bolton, what you should understand

18   is that these estimates could be wrong.  I will not able to

19   determine the advisory guideline range for your case until

20   after the presentence report has been prepared, and you and

21   the Government have had the opportunity to read it and

22   challenge the reported facts and the application of the

23   guidelines recommended by the probation officer.

24               Do you understand?

25               MR. BOLTON:  (Nonverbal gesture).

PROCEEDINGS                          27

1          THE COURT:  I need you to verbally.

2          MR. BOLTON:  Yes.  Sorry.

3          THE COURT:  No, that's okay.  Thank you.

4          The sentence that I impose may be different from any

5    estimate your attorney may have given you.

6          Do you understand?

7          MR. BOLTON:  Yes, ma'am.

8          THE COURT:  After determining your advisory

9    guideline range, I have the authority, in some circumstances,

10   to depart upward or downward from the advisory guideline range

11   and will look at other sentencing factors under 18 U.S.C.

12   3553(a) that could result in a sentence that is either greater

13   or lesser than the advisory guideline sentence.

14         Do you understand?

15         MR. BOLTON:  Yes, ma'am.

16         THE COURT:  As you sit here today, there is no

17   guarantee as to a particular guideline range or sentence.  I

18   will have to determine that range, and I'm not required to

19   sentence you within that range.

20         Do you understand?

21         MR. BOLTON:  Yes, ma'am.

22         THE COURT:  If the advisory guideline range in the

23   presentence report is different than the guideline range your

24   attorney may have advised you of or that you expected, you

25   cannot take your plea back.

PROCEEDINGS                                28

1          Do you understand?

2          MR. BOLTON:  (Nonverbal gesture).

3          THE COURT:  I need you to verbally.

4          MR. BOLTON:  Yes, ma'am.

5          THE COURT:  If the ultimate sentence I impose is

6   different than what you'd hope for or expect, you cannot take

7   your plea back.

8          Do you understand that?

9          MR. BOLTON:  Yes, ma'am.

10         THE COURT:  You should also understand that there's

11  no parole in the federal system and that if you were sentenced

12  to prison, you will not be released on parole.

13         Do you understand that?

14         MR. BOLTON:  Yes, ma'am.

15         THE COURT:  You are also waiving your right to

16  appeal your sentence.  Under some circumstances, you or the

17  Government may have a right to appeal any sentence that I

18  impose.  But by entering into the plea agreement that is Court

19  Exhibit 1, and entering a plea of guilty, you are agreeing to

20  waive or give up your right to appeal or collaterally attack

21  any part of your conviction or sentence so long as I sentence

22  you to a custodial sentence of 41 months or less.

23         Do you understand?

24         MR. BOLTON:  Yes, ma'am.

25         THE COURT:  Do you have any questions about the

PROCEEDINGS                                    29

1   rights that you are giving up, the punishments you face, the

2   agreement, the nature of the charges, or anything else

3   relating to this matter, Mr. Bolton?

4              MR. BOLTON:  No, ma'am.

5              THE COURT:  Are you ready to plead guilty,

6   Mr. Bolton?

7              MR. BOLTON:  Yes, ma'am.

8              THE COURT:  Counsel, do you know of any reason why

9   your client should not plead guilty?

10             MR. MAITLAND:  I do not, Judge.

11             THE COURT:  Mr. Bolton, what is your plea; guilty or

12   not guilty?

13             MR. BOLTON:  I plead guilty, ma'am.

14             THE COURT:  Are you making the plea of guilty

15   voluntarily and of your own free will?

16             MR. BOLTON:  Yes, ma'am.

17             THE COURT:  Has anyone threatened or forced you to

18   plead guilty?

19             MR. BOLTON:  No, ma'am.

20             THE COURT:  Other than the agreement with the

21   Government, has anyone made any promise that caused you to

22   plead guilty?

23             MR. BOLTON:  No, ma'am.

24             THE COURT:  Has anyone made any promises to you as

25   to what your sentence will be?

PROCEEDINGS                                      30

1            MR. BOLTON:  No, ma'am.

2            THE COURT:  Mr. Bolton, can you tell me in your own

3       words what it is that makes you guilty of Count One in the

4       information?

5            MR. BOLTON:  On numerous occasions between June 2022

6       and February 2024 while working as a youth development

7       specialist at New York -- NYC Administration for Children

8       Services Crossroads Juvenile Detention here in Brooklyn, I

9       took bribes in excess of 5,000 U.S. currency in return for

10      bringing in contraband.

11           THE COURT:  And what evidence would the Government

12      present at trial AUSA Grubin?

13           MR. GRUBIN:  Sure, Your Honor.  Among other

14      evidence, there would be employment records, as well as

15      testimony showing that the defendant did, in fact, work as a

16      Youth Specialist at ACS.  There would be testimony in regards

17      to the fact that in a -- that the value of -- excuse me, that

18      the ACS, in a one-year period, in each of the one-year periods

19      between June 2022 and February 2024, ACS received federal

20      benefits in excess of $10,000.

21           In addition, as far as the transactions that the

22      defendant just referred to, among other evidence, there would

23      be contraband -- communications on certain contraband phones

24      that were taken from Crossroads that showed communications

25      between residents and the defendants discussing those

PROCEEDINGS                          31

1    transactions, also phones or toll records that corroborate

2    those conversations, as well as additional conversations

3    between the defendant and residents, text messages between

4    residents and the relatives that implicate or corroborate

5    those other communications that I just referenced, CashApp

6    transactions and Apple Pay transactions, showing the payments

7    for those -- essentially, showing the bribe payments, and

8    Amazon records, as well, that show certain relatives

9    purchasing the contrabands that would be brought to the

10   residents.  That's some of the evidence, Your Honor.

11          And Your Honor, if I may, as I mentioned just now, I

12   think the parties would stipulate and the Government would

13   prove at trial, the fact that in a one-year period, ACS

14   received federal benefits in excess of $10,000.

15          THE COURT:  Were there any victims that needed to be

16   notified about this?

17          MR. GRUBIN:  No, Your Honor.

18          THE COURT:  Based on my observations of the

19   defendant and his demeanor in court, his answers to my

20   questions, the representations of his counsel, I find that

21   Defendant Bolton is fully competent and capable of entering an

22   informed plea, aware of the nature of the charges and the

23   consequences of the plea, and that the plea of guilty is a

24   knowing and voluntary plea and is supported by an independent

25   basis of fact containing the essential elements of the

PROCEEDINGS                                    32

1    offense.  I therefore accept the guilty plea to Count One of

2    the information and adjudicate you for that crime.

3              Mr. Bolton, a written presentence report will be

4    prepared by the probation department to assist the Court with

5    its sentencing.  You'll be asked to provide information for

6    the report, and if you wish, you could have your attorney

7    present for any interview with probation or the probation

8    officer.

9              Counsel, do you wish to be present for the

10   interviews?

11             MR. MAITLAND:  I do, Your Honor.  Thank you.

12             THE COURT:  Okay.  Mr. Bolton, you and your counsel

13   will have the right to read the presentence report and file

14   any objections to that report before sentencing.  You and your

15   counsel will have the opportunity to speak at the sentencing

16   hearing.  The date for sentencing will be February 25th, 2025,

17   at 10:30 a.m.

18             Does that date work with the parties?

19             MR. GRUBIN:  I apologize, Your Honor.  What was the

20   day?

21             THE COURT:  February 25th, 2025.

22             MR. GRUBIN:  Thank you.

23             MR. MAITLAND:  That's fine with us, Judge.  Thank

24   you.

25             MR. GRUBIN:  That's fine, Your Honor.  Thank you.

PROCEEDINGS                                    33

1        THE COURT:  Okay.  10:30 a.m.

2        Pursuant to 18 U.S.C. 3143(a), the Court may order a

3   defendant released after a guilty plea only under certain

4   limited circumstances.  Here, Mr. Bolton has been out on bond.

5        I'll hear from the defense, there's a request to

6   continue bond; is that right?

7        MR. MAITLAND:  Yes, Judge.

8        THE COURT:  And the Government's position?

9        MR. GRUBIN:  That's fine, Your Honor.

10       THE COURT:  Okay.  Mr. Bolton.

11       MR. BOLTON:  Yes, ma'am.

12       THE COURT:  Do you understand that a failure to

13  appear for sentencing may subject you to additional penalties

14  for the offense of failure to appear or for violation of a

15  court order.

16       Do you understand that failure to appear as required

17  is a criminal offense for which you could be sentenced to

18  imprisonment?

19       MR. BOLTON:  Yes, ma'am.

20       THE COURT:  Do you understand that all the

21  conditions of which you were released up until now apply and

22  they continue to apply until sentencing?  Do you understand

23  that?

24       MR. BOLTON:  Yes, ma'am.

25       THE COURT:  Okay.  Is there anything further that

PROCEEDINGS                           34

1   the Court needs to hear at this time?

2              MR. GRUBIN:  Not from the Government, Your Honor.

3              MR. MAITLAND:  Your Honor, I'm sorry.  Just as I

4   indicated at the outset, Judge, I don't know that the

5   appointment -- the approval of Dr. Bardey's work was broad

6   enough to cover the psychiatric social worker who's the

7   subject of the letter I referenced earlier, so I'd like to

8   make an application promptly, Judge, for -- just to clarify

9   that Dr. Bardey can also employ the services of Amy DeSimon to

10  assist Mr. Bolton between now and sentencing.  He'll be doing

11  the evaluation and rendering the report to the Court, but she

12  will be rendering supportive counseling and therapy between

13  now and then.

14             THE COURT:  That application -- you said you will be

15  making an application?

16             MR. MAITLAND:  Well, the original one was for

17  Dr. Bardey, Judge, and I don't know that the language in my

18  request was broad enough to cover Mr. DeSimon.  So I thought I

19  would make a more complete submission to Your Honor about

20  that.

21             THE COURT:  And that submission, the original

22  submission went to the magistrate judge, the duty magistrate

23  judge?

24             MR. MAITLAND:  That's right.

25             THE COURT:  And you can make the follow-up

PROCEEDINGS                                        35

1    application with that broader submission, and there's a

2    magistrate judge that's assigned to the case.

3               MR. MAITLAND:  Thank you, Judge.

4               THE COURT:  And I'm going to return to the

5    Government, the plea agreement that is Court Exhibit 1.

6               MR. GRUBIN:  Thank you.  Thank you, Your Honor.

7               THE COURT:  And is there anything further that the

8    Court needs to hear at this time?

9               MR. MAITLAND:  No, Judge.  Thank you.

10              THE COURT:  Did you want to consult with your

11   client?

12              (Pause in the proceedings.)

13              MR. MAITLAND:  Thank you, Judge.

14              THE COURT:  Okay.  Mr. Bolton, with that, I'll see

15   you on February 25th, 2025 and all counsel, okay.  Until then,

16   we stand adjourned.

17

18              (Whereupon, the matter was concluded.)

19

20                    *    *    *    *    *

21

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

23       s/ Avery N. Armstrong                March 28, 2025

24         AVERY N. ARMSTRONG                  DATE

25