

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FTB:PP/ADG
F. #2023R00349

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 17, 2025

By ECF

The Honorable Orelia E. Merchant
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Da'Vante Bolton
               Criminal Docket No. 24-383 (OEM)

Dear Judge Merchant:

      The government respectfully submits this letter in advance of defendant Da'Vante Bolton's sentencing hearing, which is scheduled for October 7, 2025. For the reasons set forth below, the government respectfully submits that a sentence within the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 18 to 24 months' imprisonment should be imposed in this case.

I.      Background

      Crossroads Juvenile Center in Brownsville, Brooklyn ("Crossroads") is a secure juvenile detention facility, managed by New York City's Administration for Children's Services ("ACS"), for youth who are alleged or adjudicated juvenile delinquents, juvenile offenders or adolescent offenders, and who have been remanded to secure detention. As of the date of the defendant's arrest, approximately 120 residents, ranging from ages 14 to 20, were detained at Crossroads, and approximately 290 staff members worked at the facility. As with any other secure facility, residents at Crossroads are prohibited from possessing any contraband, including narcotics, cellular telephones, cigarettes, weapons and alcohol. ACS employees at Crossroads are trained to confiscate any contraband they discover and must notify a supervisor when they do so. Between approximately March 2022 and May 2024, at least 75 cell phones and more than 340 scalpels or blades were recovered from the facility, as well as narcotics and tobacco. See Presentence Investigation Report ("PSR") ¶¶ 6-8.

The defendant, a Youth Development Specialist ("YDS"), accepted bribes from Crossroads residents and their associates in exchange for smuggling contraband into Crossroads, including marijuana, prescription pills and weapons. Apple Pay records show that the defendant received more than $20,000 in bribe payments from Crossroads residents or individuals associated with residents. PSR ¶ 11.

For example, in April 2023, Crossroads staff recovered a contraband phone ending in -3059. Communications on that phone were between a Crossroads resident ("Resident-1") and Relative-2, the mother of a different Crossroads resident ("Resident-2"). (Resident-1 communicated with Relative-2 on behalf of Resident-2 because Resident-2 no longer had access to a contraband phone and was in a different residence hall than Resident-1.) The communications, specifically text messages, show extensive discussions in April 2023 between Resident-1 and Relative-2 regarding smuggling contraband into the facility, including discussions about "weed" being provided by "B." On or about April 10, 2023, Resident-1 messaged Relative-2, "[Resident-2] said ask bro bro how much is he gonna charge to bring in 2 zips of weed and he also said to tell him to bring the scape in on the walk in." ("Scape" is slang for scalpel.) Relative-2 responded, "when I asked him he said he was gonna talk to him. He said he has to wait till it's not hot in there," meaning that there was too much risk for the Crossroads staff member to smuggle in the contraband. The next day, Resident-1 again messaged Relative-2 about the contraband delivery: "[Resident-2] said to tell him to bring in the blades today and how much is 4 8ths" (meaning four 1/8 ounces of marijuana); Relative-2 responded, "He said he's gonna talk to him and he will text me back a price." When Resident-1 responded, "Ok and what about the blades did he say anything," Relative-2 responded "He said it's still hot and he ain't trying to get bagged. He said he was gonna speak to him when he went in." The same day as these text messages, the defendant and Relative-2 had approximately 12 phone or text communications. Later, on or about April 16, 2023, Relative-2 told Resident-1 it was "280 with fee . . . 180 + fee," meaning that they needed to pay the defendant a total of $280 to smuggle the contraband. That day, Relative-2 paid the defendant $280 via Apple Cash. Complaint, ECF No. 1, at ¶ 11. In total, Relative-2 paid the defendant approximately $14,079 via Apple Pay.

In addition to the messages above about "blades," further messages reveal other occasions that the defendant smuggled weapons into Crossroads. In September 2023, a different Crossroads resident ("Resident-4") exchanged text messages with two associates ("Associates 1 and 2") regarding scalpels, including screenshots of the blades from Amazon.com. Specifically, on September 8, 2023, at approximately 6:13 p.m., Associate-1 texted Resident-4 a contact card showing the defendant's phone number associated with a contact called "cab," which is slang for a person who brings in contraband. On September 9, 2023, at approximately 3:50 p.m., Associate-2 texted Resident-4, "Yoo the scaps got to the crib." Resident-4 asked, "Wats scaps??" Associate-2 replied, "The ones u told me to order" and then shared the below screenshot of scalpels. Associate-2 then said, "These member u said order 2." It appears Resident-4 was confused because he also told his mother to order the same: "I told my mom to buy dem for me." Gov't Letter to Probation, ECF No. 31.



Six minutes later, Resident-4 texted Associate-1, "The scaps came mhhh (my heart)." Less than two hours later, Associate-1 texted the defendant, "What time you tryna pull up" and the defendant replied, "Wat time u ready." An hour later, the defendant texted Associate-1, "here." Id.

The next day, on September 10, 2024, the defendant worked from 7:00 a.m. to 11:04 p.m. That day, Resident-4 sent Associate-2 a photograph showing him holding a scalpel within the facility. Id.

Communications found on the defendant's phone between the defendant and associates of Resident-4 show that the defendant met with an associate of Resident-4 on at least nine occasions between July 2023 and September 2023. Conversations between Resident-4 and the associates show that they were ordering, among other things, scalpels to be brought into Crossroads. The conversations also discuss the defendant smuggling Percocet into the facility. In one conversation, on August 31, 2023, an associate of Resident-4 told the defendant that he has "yerks for em too" meaning Percocet, the brand name of the addictive pain medication containing Oxycodone and acetaminophen. The defendant responded, "Yea soo I'll pick it ip tonight." On September 12, 2023, Resident-4 texted an associate about an upcoming contraband smuggling, stating that he wants him to "crush dem and don't put it on (all) in one leave dem separate." Based on the context of "crush" and the previous conversation about Percocet, Resident-4 appears to be asking for the Percocet to be crushed. Approximately one hour later, at approximately 12:45 a.m. on September 13, 2023, the defendant told this associate that he will

3

meet him in five minutes. The next day, on September 14, 2023, as he was being taken to court, Resident-4 passed out and was found unconscious. Resident-4 ultimately regained consciousness, but the court transportation staff stated that Resident-4 was difficult to arouse and was unable to walk or talk. When he arrived at Lincoln Hospital, Resident-4 told the medical providers that he had taken a Percocet earlier that day and then passed out. Resident-4 also informed the medical staff that he regularly took Percocet. Resident-4's vitals were stable by the time he arrived at the hospital, and he was discharged later that day. PSR Addendum.

On June 26, 2024, the defendant and four other staff members at Crossroads were arrested on complaints charging them with conspiring to accept bribes in exchange for smuggling contraband into Crossroads, in violation of 18 U.S.C. §§ 371 and 1952(a)(3). On September 26, 2024, the defendant waived indictment and pleaded guilty to the sole count of the information charging him with federal program bribery, in violation 18 U.S.C. § 666(a)(1)(B).

II.   Guidelines Calculation

The government submits that the Guidelines range contained within the PSR, and detailed below, should apply:

| | |
|---|---:|
| Base Offense Level (§ 2C1.1(a)(1))) | 14 |
| Plus: More than One Bribe (§ 2C1.1(b)(1)) | +2 |
| Plus: More than $15,000 in Bribes (§ 2C1.1(b)(2)) | +4 |
| Minus: Acceptance of Responsibility (§ 3E1.1) | -3 |
| Minus: Zero-Point Offender (§ 4C1.1 (2023 ed.)) | -2 |
| Total: | <u>15</u> |

Based on a Criminal History Category of I, the Guidelines calculate a range of imprisonment of 18 to 24 months.

III.   The Court Should Impose A Sentence Within the Guidelines Range

A sentence within the Guidelines range of 18 to 24 months is sufficient but not greater than necessary to achieve the goals of sentencing in this case. As an initial matter, the defendant's conduct was extremely serious. The defendant smuggled contraband, including marijuana, prescription pills and weapons, into a juvenile detention facility in exchange for bribes. Because the defendant's actions directly led to the introduction of dozens of dangerous weapons into Crossroads as well as addictive drugs like Percocet, an incarceratory sentence is necessary. The City of New York placed its trust in the defendant to properly administer the very important and sensitive responsibility of guarding incarcerated juveniles; the defendant chose to abuse that trust, betraying the duties he owed to the public, the juveniles in his care, the institution and his fellow officers. These contraband smuggling schemes, such as the one in

which the defendant participated, threaten the safety and integrity of detention facilities. The defendant's actions could have easily led to the harm or death of a juvenile or YDS. Blades and scalpels seemingly only serve one purpose in a detention facility. It is unconscionable that the defendant facilitated their introduction.

Second, the defendant's conduct was not aberrational or a one-time mistake; the defendant participated in this bribery scheme for more than a year and smuggled contraband for multiple residents. The defendant's repeated criminal conduct warrants an incarceratory sentence.

A Guidelines sentence is also necessary to reflect the relative culpability of the defendant compared to the other YDS's charged by the government. To date, five YDS's have been convicted of bribery and two have been sentenced: Christopher Craig to probation by Your Honor and Nigel King to six months' incarceration by the Hon. Rachel P. Kovner. The defendant is by far the most culpable of any defendant charged to date. He accepted significantly more money in bribes than other defendants (including four times as much as Craig and three times as much as King) and repeatedly smuggled in Percocet pills and weapons. While smuggling contraband of any sort is criminal and dangerous, the defendant went further than his colleagues by smuggling in items that could have, and in once case did, easily harm a resident.

An incarceratory sentence would also be consistent with sentences for correction officers who accepted bribes in comparable or less egregious circumstances. Although some judges have imposed non-incarceratory sentences for smuggling contraband into prison facilities, many judges have imposed prison time for conduct similar to here, even when the defendant did not smuggle in weapons. See United States v. Christian Mizell, 18-CR-060 (PKC) (E.D.N.Y.) (19 months' imprisonment for correction officer who received bribes and smuggled in contraband on at least two occasions); United States v. Simon Gordon, 19-CR-352 (CBA) (E.D.N.Y.) (eight months' imprisonment for receiving $10,000 in bribes to smuggle marijuana, tobacco, suboxone and a cell phone); United States v. Victor Casado, 18-CR-374 (RJS) (S.D.N.Y.) (36 months' imprisonment for receiving over $25,000 in bribes to smuggle alcohol and cell phones into federal jail; correction officer also implicitly threatened one of the inmates who paid him); United States v. John Grosso, 15-CR-207 (SRC) (D. N.J.) (correction officer who smuggled a cellphone and cigarettes into prison sentenced to 24 months' imprisonment). The Hon. Carol B. Amon sentenced a New York City correction officer to a year and a day in prison for accepting more than $34,000 to smuggle cell phones and narcotics, even though she had significant medical issues. See United States v. Katrina Patterson, 22-CR-196 (CBA). And the Hon. Dora L. Irizarry sentenced a correction officer at the Metropolitan Detention Center to 30 months' imprisonment for accepting more than $20,000 to smuggle cell phones and narcotics. See United States v. Quandelle Joseph, 23-CR-306 (DLI).

Public corruption undermines the function of government and the public's faith in its institutions. Criminal activity that undermines that faith must be punished, especially when it endangers juveniles in the State's custody and care. As a staff member at Crossroads, the defendant was responsible for preserving security within a juvenile detention facility and protecting both the individuals he worked with and those he guarded. But by accepting bribes to

5

bring in contraband, including weapons and dangerous narcotics, the defendant not only abandoned those responsibilities, he also advanced conditions that risked the safety of those at the facility. And, crucially, the defendant's criminal conduct was repeated; he was no reluctant participant. He chose, again and again, to violate his oath by accepting bribes to smuggle contraband to juveniles. The crisis in our city's jails and juvenile detention facilities will only improve when public officials like the defendant understand that the punishment for such conduct outweighs the short-term financial rewards. Thus, in this case, only a sentence of incarceration will satisfy all the Section 3553(a) factors.

IV.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the Guidelines range.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/ Philip Pilmar
Philip Pilmar
Andrew D. Grubin
Assistant U.S. Attorneys
718-254-6106

cc:   Clerk of the Court (OEM) (by ECF)
      Defense counsel (by ECF)
      Alexandria Lohwasser, United States Probation Officer (by E-mail)